## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL MARTINO, | : | |
|     Plaintiff | : | CIVIL ACTION NO. |
| | : | 3:10CV01816(JBA) |
| vs. | : | |
| | : | |
| | : | |
| METRO NORTH COMMUTER | : | |
| RAILROAD COMPANY, ASSOCIATION | : | |
| OF COMMUTER RAIL EMPLOYEES, | : | |
| Local Division 9, and MICHAEL F. DOYLE | : | |
| as General Chairman, | : | |
|     Defendants | : | September 4, 2012 |

### SECOND AMENDED COMPLAINT

This is an action seeking damages against Metro North Railroad and Association of Computer Rail Employees ("ACRE"), Local Division 9, and Michael F. Doyle, in his representative capacity as Chairman of ACRE, by Michael Martino for violation of the §301 of the Labor Management Relations Act, 29 U.S.C. §185 for breach of the duty of fair representation and breach of the collective bargaining agreement; and seeking to vacate the arbitration award pursuant to The Railway Labor Act, 45 U.S.C. §151, 153 et seq. based on failure to conform, violation of due process, and fraud.

### **JURISDICTION**

1. Jurisdiction of this court is invoked under the provisions of 28 U.S.C. §1331 and The Railway Labor Act, 45 USC §151 and 28 U.S.C. §1291.

**PARTIES**

2. During all times relevant to this complaint, Mr. Martino worked and resided in the State of Connecticut and was an employee of a carrier as that term is defined in 45 USC §151.

3. During all times relevant to this complaint, Defendant Metro-North Commuter Railroad Company (hereinafter "Metro North" or "the Carrier") was a public benefit corporation and subsidiary of Metropolitan Transit Authority, a public authority of the State of New York, which provides commuter rail service. Metro-North was and still is duly authorized to conduct business in the State of Connecticut, with a principal place of business at 347 Madison Avenue, New York, New York. Metro North is a carrier as that term is defined in 45 USC §151.

4. Defendant ACRE ("the Organization") Local Division 9, formerly Brotherhood of Locomotive Engineers (BLE) Local Division 127, is a party to a collective bargaining agreement ("CBA") with defendant Metro North. Acre is a labor organization located at 420 Lexington Avenue, Suite 215, New York, New York, that serves as the exclusive collective bargaining representative for engineers employed by Metro-North.

5. Defendant Michael F. Doyle is sued in his representative capacity as the

General Chairman of ACRE Local Division 9, and prior to February, 2000 as General Chairman of BLE Local Division 127.  At all times relevant herein, Doyle was acting in his representative capacity on behalf of BLE Local Division 127 or ACRE Local Division 9.

**FACTS**

6. The plaintiff has been employed by Metro-North or its predecessor railroads since 1967.  During the times in question he held the position of locomotive engineer.  He is a member of ACRE, Local Division 9 ("ACRE").

7. The Collective Bargaining Agreement between Metro-North and ACRE provides for a three-step disciplinary procedure.  The process begins with investigation and disciplinary proceedings within Metro-North's Operations Services Department.  That decision may be appealed through arbitration before a special adjustment board.  Each adjustment board has three members - a union member, a carrier member, and a chairman, who is a neutral party.

8. In 1997, plaintiff was accused of being in a verbal altercation with a vending machine operator at the Union New Haven Station. Following a hearing, he was given a 30 day actual suspension, 45 days deferred by

      Assistant Superintendent S. L. Herrington, New Haven-Harlem lines, which discipline was never imposed.  The letter of discipline was not provided within the time required by the CBA, Rule 23,f.1,  and there was no case number assigned to the incident.  Although Herrington had referred the incident to the Metro- North Detective Bureau, who concluded that plaintiff had done nothing wrong, Herrington invoked her own charges, and imposed her own discipline.  There were two letters of complaint that were not provided to Martino in accordance with the CBA, Rule 23, c, 2.  Doyle did not object.

9.    In November, 1998, Mr. Martino reported another engineer, George Tompkins, for assaulting him in the Engineer's Lounge at Grand Central Terminal.  Tompkins had been involved in the 1997 incident having provided the complainant with Martino's name.  Mr. Martino was taken to the hospital by ambulance for his injuries.  Despite this, and without investigation, Mr. Martino was taken out of service immediately, and held out of service for 35 days.  The alleged perpetrator, Tompkins, was put back in service the next day by Herrington's and/or Kiniry's authority.  The investigation hearing regarding this incident, which took place almost two years after the incident, was postponed on numerous

occasions, without proper explanation, in violation of the CBA, Rule 23, c.1, c. 2 and d.1.

10. Superintendent Herrington should not have been involved in the incident that took place in Grand Central Terminal, which was within the jurisdiction of the Superintendent of the Grand Central Terminal and the Hudson Line, not the New Haven-Harlem line, but Herrington stepped in so Kanell could impose the discipline.

11. Prior to the hearing the Carrier would not allow Mr. Martino to call certain witnesses that he believed had relevant information, as set forth in the notice of investigation, and in violation of CBA Rule 23, d, 2. Mr. Tompkins, however, was permitted to postpone his disciplinary hearing for the purpose of calling numerous "character" witnesses, who were actually close friends of Tompkins, who did not witness the incident in question, and who were paid by the Carrier, and approved by Herrington. One of those witnesses, M. Anson-Talbot, had a bias against Mr. Martino, who had reported her for misconduct eight years earlier. He had reported her to M. Kiniry, then Superintendent, New Haven line after which Kanell, Martino's supervisor at the time, stated "I wish you would have come to me first." Doyle did not object to the testimony of

witnesses who had no connection to the incident.

12. An inflammatory letter dated July 30, 1991, written by General Chairman Phelan, United Transportation Union (UTU), regarding Martino's complaint regarding Anson-Talbot, addressed to Kiniry, then New Haven division Superintendent, was put in evidence at Tompkins 1999 hearing, when Anson-Talbot testified for Tompkins. No actual witnesses to the incident testified other than Martino and Tompkins. Mr. Martino, following his hearing, which occurred twenty months after the incident in violation of the CBA, Rule 23, c.1 and d.1, was found to be at fault by J.Kanell and was disciplined with 35 days, actual suspension, given two years earlier, when plaintiff was withheld from service from November 15, 1998 until December 19, 1998.(#4807). The notice of discipline was dated August 23, 2000. The notice of discipline was appealed.

13. In July, 2000, Mr. Martino was accused by Tompkins of engaging in a verbal altercation at the Roosevelt Hotel in New York. Mr. Martino was not furnished a copy of the written complaint together with the written notice of the investigation as required by the CBA, Rule 23, c. 2. The complaint was put in writing less than 24 hours before the investigation

took place on August 16, 2000, in violation of the CBA, Rule 23, c, 2. Doyle did not object to the complaint being furnished late. Mr. Martino was never interviewed about the incident. It was alleged that Martino verbally assaulted Mr. Tompkins first in an elevator, and then in the main lobby and on the sidewalk in front of the hotel in front of hundreds of witnesses.

14. Security tapes from inside and outside the hotel were reviewed at the hearing covering a period of two hours and revealed no evidence of wrongdoing by Mr. Martino. Witnesses named by the Carrier in the letter of investigation, including Roosevelt Hotel doormen, were never produced to testify at the hearing. An investigative report prepared by the Grand Central Terminal Operation Trainmaster, Darryl Simpson, was suppressed by Frederick N. Chidester, Hearing Officer. Following the incident, Mr. Martino was immediately removed from service by S.L. Herrington, who was at the time Deputy Chief of Operating Services, and held out of service for nearly three months with absolutely no evidence against him other than the testimony of Mr. Tompkins.

15. Mr. Martino was dismissed pursuant to Notice of Discipline (#4808), once again imposed by J. Kanell, Line Superintendent for the New Haven. The

      discipline for the Grand Central engineer's lounge incident was not imposed until two years after the incident in a notice of discipline dated August 23, 2000 in violation of the CBA.  The notice of discipline was appealed.  In responding to the appeals #4807 and 4808, M.J. Kiniry, Chief of Operations Services, in a letter dated November 2, 2000, suggested that there had been an "appeal for leniency" by Doyle and on a "last chance basis only", the disciplines were reduced to a suspension, with time out of service to apply.  There was no agreement among the parties that Mr. Martino be reinstated to service on a last chance basis, nor was there an appeal for leniency.  The decision was appealed.

16. None of the three incidents have been progressed to the Special Board of Adjustment 959 for appeal, in violation of fundamental rights under the CBA, and despite numerous other cases being progressed to the Board by General Chairman Doyle on behalf of other members, yet these cases have been used against Mr. Martino in imposing discipline since 2000.  For example, on April 11, 2001, Mr. Martino was accused of improper conduct resulting in a minor collision with the shop wall in Stamford.  Although both Martino and the conductor, Robert Ard, were eventually removed from service by J.Kanell after completing the yard work for

morning rush hour, and drug and alcohol tested, only Martino was disciplined.  Ard was not charged, even though it was undisputed that he was in violation of Metro-North Operating Rule 38, and had a history of violating Rule 38.  Martino was dismissed by Kanell. (#4858).  The decision was appealed.  In responding to the appeal, and affirming the dismissal, J.D. Riley, General Road Foreman of Engines, in a letter dated June 11, 2001 to Doyle, referenced and relied upon the "last chance basis" agreement that had never occurred.  The Arbitrator noted that the Conductor and Assistant Conductor "led to the Engineer's detriment".  He reversed this decision (#113)  but referred to the three prior incidents outlined above as follows: "The claimant's extremely poor disciplinary record during the recent period of time provided a reasonable basis for the Carrier to conclude that significant discipline of the claimant constituted a proper action." In the award, the Arbitrator stated "seniority will not absolve him from termination should a serious infraction recur".

17. On August 3 and 5, 2009, Mr. Martino was accused of failure to immediately perform running brake tests.  On August 3 a Federal Railroad Administration Inspector was train-riding on Metro-North

9

Railroad as part of his duties. The Inspector did not immediately bring this violation to Martino's attention. Mr. Martino was not provided with a timely notice of an investigation and letter of complaint in connection with one of those incidents in accordance with CBA, Rule 23, c. 1, 2 and d. 1.  This procedural error left plaintiff without a reasonable time to prepare his defense.  In addition, the FRA Inspector was not called as a witness.  As a result of these procedural irregularities, the Carrier deprived the plaintiff of substantial and valuable rights guaranteed in the CBA, yet the Arbitrator's award finds "no procedural issues presented." Martino was not subjected to a drug or alcohol test when relieved of his duties following the report, which is standard procedure, nor was his license revoked.  He was not removed from service until August 5, despite the alleged violation on August 3. Although a serious violation was alleged he was not removed from service when he reported for his assignment on August 4.  Notice was given to William J. Parsons, Director of Operating Rules, on August 3 in the form of an FRA Inspection Report.  Between August 3 and August 5 when he was removed from service, Martino ran a total of seven trains for 254 miles along Metro-North's right of way.  No engineer, prior to Martino, has ever

been charged with a failure to immediately perform a running break test with M-Series equipment in place since the inception of Metro-North in 1983, nor has any known violation of this rule been reported.  During the hearing, neither ACRE or the Carrier called William J. Parsons, Director of operating Rules, who would have acted as an expert on the rules, to testify, despite a discrepancy in the Rules (105-D and 106-B(3)) and whether Martino had complied.  A. T. Smith, System Road Foreman, who testified for the Carrier and was the only witness on this issue, had no personal knowledge of the downloading from the event recorder, rather relied on what others from Fleet Management and GCT Mechanical Department had reported to him.  His testimony was not challenged by Doyle as to whether the proper procedures were used in the downloading and whether those personnel were trained.  Following disciplinary hearings, Mr. Martino was suspended for 61 days for the former incident, and dismissed in all capacities for the latter incident.  J. Kanell, once again, imposed the discipline.

18. In their Brief, the Carrier raised an event that occurred in 1990 wherein Martino was accused of speeding.  Martino was never disciplined in connection with that event because there was no such location on the

11

New Haven division known as "Bridge 26.80" and set forth in the disciplinary notice. ACRE did not object to this reference in the Carrier's brief.

19. Martino was not properly notified by the General Road Foreman of Engines of the revocation of his Certification in August, 2009 as required by and in violation of FRA Regulations and the CBA, Rule 23(f). Andrew Favilla, Assistant Director Operating Rules, made a false statement in a letter dated June 16, 2010 to Alan Nagler, Counsel for Federal Railroad Administration Locomotive Engineering Review Board ("LERB"), that Martino had "refused to surrender" the certificate, which was not true.

20. Prior to the arbitration hearing on these matters, plaintiff was offered reinstatement in two separate letters dated January 19, 2010 and February 4, 2010 from Monu Singh, Senior Labor Relations Representative for the Carrier, in exchange for a waiver of his claim for lost time out of service. As these offers constituted an admission that the discipline of time lost was sufficient, the discharge was not for just cause and should have been vacated, and only the six months removal from service should have been at issue on appeal. General Chairman Doyle and/or ACRE failed to make this crucial argument.

21. Also prior to the arbitration hearing, in a letter dated June 23, 2010, Martino was notified by Doyle on behalf of ACRE that the three prior disciplines were "expunged" and would not be presented to SBA 959 to support the dismissal in the current case.  The disciplines had already been used to support the dismissal being appealed (Award#113). Nonetheless, the disciplines were cited by the Carrier in their Brief in Case No. 121-122 on pp. 9 and 12, and Award #113 was attached as an Exhibit to the Brief.   There was no challenge in ACRE's brief to the references to Award #113. Despite the expungement, and contrary to his own letter to Doyle dated June 25, 2010 confirming the expungement, Andrew J. Paul, Director of Labor Relations, testified at the hearing that Award #113 should be considered in assessing the appropriateness of the discipline.  Likewise, the Carrier cited the prior disciplinary history, which had been expunged, in its Brief.  This was not raised by ACRE in its brief or at the hearing.

22. On July 7, 2010, these matters were heard by the SBA 959.  ACRE failed to make the argument that only the six months removal from service should have been appealed based on Metro-North's offer of reinstatement.  In addition, ACRE, did not conduct an investigation into

13

      the facts surrounding the charge nor did he introduce evidence regarding the procedures used for downloading data from the event recorder.

23. In a decision dated July 27, 2010, the discipline was affirmed, however, the termination was converted to a resignation from service, which exceeded the authority of the arbitrator.  Martino never agreed to resign from service.  The Award was not signed by the three arbitrators, only by the neutral.

24. Defendant Doyle, ACRE's chairman, receives compensation from Metro-North pursuant to a contract with Metro-North.

25. Plaintiff appealed the decision of Metro North to revoke his locomotive engineer certification based on the August 3 and 5, 2009 incidents to the Locomotive Engineer Review Board. ("LERB").  ACRE did not inform the arbitrator in the SBA 959 hearing on July 7, 2010 of the pending appeal. In a decision dated May 9, 2011, the LERB found that there was not substantial evidence in the record to support the August 5, 2009 violation of 49 C.F.R. Part 238, for which plaintiff was dismissed in all capacities,  and that Metro North should have determined that all three incidents were part of a continuing investigation beginning with the first incident on August 3, 2009 and that plaintiff's certification should have

14

only been revoked for a 30 day period.

**FIRST COUNT**  (Hybrid Claim/ LMRA §301)

26. Paragraphs 1-38 are hereby incorporated as if fully set forth herein.

27. ACRE had an obligation to treat all members of the Organization equally, and to protect plaintiff from improper acts of the Carrier regarding discipline of employees.

28. Metro-North acted in conjunction with ACRE to discriminate against the plaintiff.

29. By the above acts, the defendants acted in a discriminatory, dishonest, and arbitrary manner when the plaintiff was terminated and so as to breach the duty of fair representation and the collective bargaining agreement, including discharging plaintiff without just cause.  Through procedural errors, plaintiff was deprived of substantial and valuable rights guaranteed in the CBA.

30. Michael Doyle in his capacity as Representative for BLE, Division 127 and/or ACRE, Division 9, breached the duty of fair representation when he failed to progress the three disciplines to SBA 959, and failed to limit the issue before the SBA 959 to time lost given the offer of reinstatement. The Carrier violated the CBA by terminating plaintiff without just cause

and Doyle inadequately addressed the Carrier's breach.

31. The acts of defendants as described above were done maliciously or with reckless indifference to the federally protected rights of the plaintiff.

32. As a result of defendant's conduct, plaintiff has suffered and continues to suffer damages, including lost wages and benefits, and emotional distress.

**SECOND COUNT** (Violation of Railway Labor Act 45 U.S.C. §153)

33. Paragraphs 1-32 are hereby incorporated as if fully set forth herein.

34. In rendering its decision, the Adjustment Board failed to comply with the requirements of the Railway Labor Act.

35. The Adjustment Board failed to conform, or confine itself, to matters within the scope of its jurisdiction, 45 U.S.C. §153, First (q).

36. Plaintiff's right to due process was violated when the Board was not presented with a statement of the facts and all supporting data bearing upon the dispute as required by §153, First (i) of the Railway Labor Act. Plaintiff's was unable to call the FRA Inspector as a witness due to the failure of defendant Metro-North to include the FRA Inspector's report in the written notice of investigation, which constituted the letter of complaint.  Plaintiff was unable to call two witnesses that he requested

16

called who had personal knowledge of material facts pertaining to the case. There was no transcript of the hearing. Plaintiff was denied a choice in choosing a neutral Board member. Defendant's failure to notify plaintiff of a pending investigation regarding the alleged incidents of August 3 at all, combined with the failure to include the Inspector's report, deprived plaintiff of a fair and impartial hearing.

37. At all times relevant to the hearing before the Adjustment Board, Andrew Paul, sitting as Metro North's representative before the Board and as a member of the Board deciding the dispute, knew or should have known that the three prior disciplines had been expunged. Nevertheless, Paul and Doyle allowed the neutral to believe that plaintiff had prior disciplines against him and, therefore, was subject to harsher discipline than if he had no such record. These disciplines had already been used in the #113, where Paul was also a Board member, even though they were not fully adjudicated. Paul stated at the hearing that he had no knowledge of the appeal to the LERB, even though he had been given notice. The neutral did not know what the "LERB" was and was inexperienced with cases involving engineers. Plaintiff was not given an opportunity to agree on the issues presented in the Arbitration

Agreement, which he never saw. The acts and omissions of Paul and Doyle constituted fraud, and the Award should be set aside under Section 3, First (p) of the RLA, 45 U.S.C. §153.

38. As a result of the defendant's conduct, plaintiff has suffered damages.

**WHEREFORE**, the plaintiff claims judgment against defendants and:

1. Compensatory damages;
2. Back pay, with interest;
3. Reinstatement with full seniority and benefits;
4. Arbitration award vacated;
5. Attorneys fees and costs;
6. Such other relief as is necessary and proper to make the plaintiff whole.

**JURY DEMAND**

Plaintiff demands a trial by jury.

PLAINTIFF, MICHAEL MARTINO


By:\_\_\_\_/s/_____
Barbara E. Gardner, CT07623
843 Main Street, Suite 1-4
Manchester, CT 06040
Tel. (860) 643-5543
Fax. (860) 645-9554
Bg@bgardnerlaw.com


## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by electronic mail via the CM/ECF system on this 4th day of September, 2012, to the following counsel of record:

Vincent F. O'Hara
Holm & O'Hara LLP
3 West 35th St., 9th Floor
New York, NY 10001

Sofia C. Hubscher
Ryan Ryan Deluca LLP
707 Summer St.
Stamford, CT 06901


_____/s/_____
Barbara E. Gardner