UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL MARTINO,<br>    *Plaintiff*,<br>        *v.*<br>METRO NORTH COMMUTER RAILROAD<br>COMPANY, ASSOCIATION OF COMMUTER<br>RAIL EMPLOYEES, Local Division 9, and<br>MICHAEL F. DOYLE as General Chairman,<br>    *Defendants*. | Civil No. 3:10cv1816 (JBA)<br><br><br><br>June 24, 2013 |

**RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Michael Martino, a former locomotive engineer, filed suit against his former employer, Metro North Commuter Railroad Company ("Metro North"), his former union, Association of Commuter Rail Employees ("ACRE"), Local Division 9, and Michael F. Doyle, in his representative capacity as Chairman of ACRE. Plaintiff brings a hybrid claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 and a claim to vacate the arbitration award under the Railway Labor Act ("RLA"), 45 U.S.C. § 153, based on the discipline he received as a result of two brake test violations in August 2009. Defendants have moved for judgment on the pleadings as to both counts. For the reasons set forth below, Defendants' motions [Doc. ## 69, 74] will be granted.

**I.     Factual Background**

Plaintiff alleges the following in his Second Amended Complaint [Doc. # 65]. He worked as a locomotive engineer for Defendant Metro North or its predecessor railroads since 1967 (2d Am. Compl. ¶ 6), and was a member of Defendant ACRE, Local Division 9, which serves as the exclusive collective bargaining representative for engineers

employed by Defendant Metro North (*Id.* ¶ 4). Defendant ACRE is a party to a collective bargaining agreement ("CBA") with Defendant Metro North. (*Id.*)

The CBA sets forth an investigative and disciplinary procedure for employee infractions that may be appealed or "progressed," through arbitration before a special adjustment board, composed of a union member, a carrier member and a neutral chairman. (*Id.* ¶ 7; *see* CBA, Ex. B to Doyle Aff. [Doc. # 70] at 28–34.)[1] Rule 21(a) of the CBA states that the Special Board of Adjustment ("SBA") "will have exclusive jurisdiction over all final appeals in claims for compensation, discipline proceedings, or any dispute concerning the interpretation of [the CBA]." (CBA at 24.) The CBA requires, through various provisions in Rule 23, that Defendant Metro North provide notice of disciplinary action taken against its engineers. (*See id.* at 30.) Rule 23(d)(2) provides that an engineer who may be subject to discipline will have the right to present witnesses who have knowledge of the act or occurrence and present testimony. (2d Am. Compl. ¶ 11; CBA at 30.)

### A.      Plaintiff's Disciplinary History Prior to 2009

In 1997, Plaintiff was disciplined for engaging in a verbal altercation with a vending machine operator at Union Station in New Haven. (2d Am. Compl. ¶ 8.) In 1998, Plaintiff reported an engineer for assaulting him and was disciplined and "held out of service for 35 days" immediately after the incident. (*Id.* ¶ 9.) In 2000, Plaintiff was accused

---

[1] See Section II(A), *infra*, for a description of the documents that have been considered by the Court in this Ruling on Defendants' motions for judgment on the pleadings.

of engaging in another verbal altercation with a fellow Metro North employee at the Roosevelt Hotel in New York. (*Id.* ¶ 13.) He was removed from service immediately following the incident (*id.* ¶ 14), and his dismissal was ultimately reduced to a suspension as a result of his appeal (*id.* ¶ 15). These disciplinary actions were not "progressed" to the SBA for appeal, which Plaintiff alleges is "in violation of fundamental rights under the CBA," and Doyle has progressed such disciplinary actions on behalf of other members. (*Id.* ¶ 16.) Plaintiff asserts that notwithstanding the fact that his incidents were not progressed, they "have been used against [Plaintiff] in imposing discipline since 2000." (*Id.*)

In 2001, Plaintiff alleges he was accused of improper conduct causing a "minor collision" with his train and "the shop wall in Stamford." (*Id.*) Plaintiff was dismissed for this incident but was reinstated on appeal in 2002. (*See* Award 113, Ex. F to Brief of Metro North, Ex. 9 to Paul Aff.) The arbitration award reinstating Plaintiff briefly discusses his past disciplinary history from 1997, 1998 and 2000, mentioning the number of days he was suspended, and noting that

> The Claimant's extremely poor disciplinary record during the recent period of time provided a reasonable basis for the Carrier to conclude that significant discipline of the Claimant constituted a proper action. . . . The Claimant shall be reinstated . . . with the clear understanding that his seniority will not absolve him from termination should a serious infraction recur.

(*Id.*)

In a letter dated March 31, 2005 from Doyle to Plaintiff discussing Plaintiff's past disciplinary cases, Doyle wrote: "You had three outstanding disciplines related to disputes

between you and a fellow employee on two occasions and one with a vendor . . . when you were on duty as a locomotive engineer," (March 31, 2005 Letter, Ex. 2 to Pl.'s Opp'n [Doc. # 45-2] at 2.) "Since these former disciplines resulted from confrontations which in and of themselves could have resulted in dismissal[,] the decision was ultimately made by **you** to withhold these cases pending resolution of your [collision-related] dismissal." (*Id.* (emphasis in original).) In a subsequent letter to Plaintiff dated June 23, 2010, Defendant Doyle wrote, "[i]t is important to reiterate that you chose not to have these outstanding cases presented before SBA 959 prior to your previous dismissal and reinstatement order under Award #113." (June 23, 2010 Letter, Ex. 3 to Pl.'s Opp'n at 1.)

**B.     Brake Test Disciplinary Hearings**

In August 2009, Plaintiff was terminated for two incidents involving brake testing failures. On August 3, 2009, Plaintiff was accused of "failure to immediately perform running brake tests" upon departing from New Haven which is "a serious violation." (2d Am. Compl. ¶ 17; Aug. 7, 2009 Letter from John Longobardi to Plaintiff, Exs. 2 & 3 to Paul Aff. [Doc. # 35].) Plaintiff alleges that he was not immediately notified of his violation by the Inspector. (2d Am. Compl. ¶ 17.) On August 5, 2009, Plaintiff was again accused of "failure to immediately perform running brake tests" upon departing from Rye and was removed from service on August 5, 2009. (*Id.*) Plaintiff alleges that he received timely notice of investigation and letter of complaint in connection with only one of the two incidents in August of 2009, in violation of CBA Rule 23(c)(1)–(2), which "left [him] without a reasonable time to prepare his defense." (*Id.*) However, the record shows that

he received notice on August 7, 2009 that formal investigations were being commenced as to both incidents, with hearings scheduled for August 21, 2009 (Aug. 7, 2009 Letters from Longobardi to Pl.; Aug. 14, 2009 Letters from Longobardi to Pl., Exs. 2 & 3 to Paul Aff.). The formal investigation hearings for both "brake test" incidents were held in consecutive morning and afternoon sessions on August 21, 2009, both of which Plaintiff attended. (Doyle Aff. ¶ 17.)

During the hearings for the August 2009 brake test incidents, neither Defendant Doyle nor Defendant Metro North called the Director of Operating Rules to act as an expert on the rules governing brake tests. (2d Am. Compl. ¶ 17.) The only witness called during the hearings was the System Road Foreman, on Defendant Metro North's behalf, who had no personal knowledge of the downloading of "event recorders" (*id.*) that were used to show the speed of the trains relative to when the brakes were applied (*see* Disciplinary Hr'g Tr., Ex. J to Doyle Aff. at 29). Doyle failed to challenge the Foreman "as to whether the proper procedures were used in the downloading and whether those personnel [who downloaded the events] were trained." (2d Am. Compl. ¶¶ 17, 22.) Plaintiff was suspended for 61 days for the August 3, 2009 incident and dismissed for the August 5, 2009 incident. (*Id.* ¶ 17.)

Plaintiff was offered conditional reinstatement to his employment in two letters in 2010, which he declined. (*Id.* ¶ 20; *see also* Doyle Aff. ¶ 21.) In his subsequent appeal challenging the disciplines imposed for the August 3 and August 5, 2009 incidents, briefs were submitted to the SBA by Defendant Metro North and by Defendant ACRE on

Plaintiff's behalf. (*See* Brief of ACRE, Ex. P to Doyle Aff.; Brief of Metro North, Ex. Q to Doyle Aff.)

During the appeal hearing, Plaintiff claims that Defendant Doyle did not make certain "crucial argument[s]" (2d Am. Compl. ¶ 20), including the arguments that the offers of reinstatement "constituted an admission that the discipline of time lost was sufficient, [that] the discharge was not for just cause and should have been vacated, and [that] only the six months removal from service should have been at issue on appeal." (*Id.* ¶¶ 20, 22.) Plaintiff further claims that Defendant Doyle also failed to object to a reference in Metro North's Brief to an incident for which Plaintiff had not been disciplined (*id.* ¶ 18), and failed to object to the statement in Award 113 referencing Plaintiff's prior disciplinary history. This history had been attached to Defendant Metro North's Brief, despite Defendant Doyle having assured Plaintiff in his letter of June 23, 2010 that the prior actions had been expunged and that they would "not be presented to SBA 959 to support the Carrier's action of dismissal in the current case." (*Id.* ¶ 21; June 23, 2010 letter, Ex. 3 to Pl.'s Opp'n ("[The] three pending cases that have not been heard before the Special Board of Adjustment 959 have been expunged from your record and will not be presented to SBA 959 to support the Carrier's action of dismissal in the current case.")).

Defendant Doyle is also alleged to have failed to inform the arbitrator of Plaintiff's pending appeal of revocation of his locomotive engineer certification to the Locomotive Engineer Review Board ("LERB"). (*Id.* ¶ 25.) Plaintiff's discipline was affirmed on July 27,

2010, though the termination was converted to a "resignation from service," which Plaintiff contends "exceeded the authority of the arbitrator." (2d Am. Compl. ¶ 23.)

### C.   Claimed Causes of Action

Under Count One, Mr. Martino alleges that Defendant Metro North acted with Defendant ACRE "to discriminate against the plaintiff," in violation of 29 U.S.C. § 185 (2d Am. Compl. ¶ 28), and that the defendants acted in a "discriminatory, dishonest, and arbitrary manner when the plaintiff was terminated," thus breaching the duty of fair representation and the collective bargaining agreement, by "discharging plaintiff without just cause" (*id.* ¶ 29). Plaintiff contends that "[t]hrough procedural errors, plaintiff was deprived of substantial and valuable rights guaranteed in the CBA." (*Id.*)

Specifically, Plaintiff claims that Defendant Doyle "breach[ed] the duty of fair representation and the collective bargaining agreement" (*id.*) when he "failed to progress the three disciplines [from 1997, 1998, and 2000] to [the SBA], failed to limit the issue before the [SBA] to time lost given the offer of reinstatement" (*id.* ¶ 30), "inadequately addressed [Defendant Metro North's] breach," and that Defendant Metro North violated the CBA by terminating Plaintiff without just cause (*id.*). Plaintiff alleges that the "acts of defendants as described above were done maliciously or with reckless indifference to the federally protected rights of the plaintiff." (*Id.* ¶ 31.)[2]

---

[2] The two incidents occurring on August 3, 2009 and August 5, 2009, having led to Plaintiff's termination, gave rise to the allegations supporting Plaintiff's primary hybrid claim under 29 U.S.C. § 185. At oral argument, Plaintiff clarified that the allegations regarding the disciplinary proceedings of 1997, 1998, and 2000 are alleged not only as

In Count Two, Plaintiff alleges that the SBA failed to comply with the requirements of 45 U.S.C. § 153 (*id.* ¶ 34) in failing "to conform, or confine itself, to matters within the scope of its jurisdiction" (*id.* ¶ 35). He further alleges that his due process rights were violated:

> when the Board was not presented with a statement of the facts and all supporting data bearing upon the dispute as required by § 153, First (i) of the Railway Labor Act. Plaintiff's [sic] was unable to call the FRA Inspector as a witness due to the failure of defendant Metro-North to include the FRA Inspector's report in the written notice of investigation, which constituted the letter of complaint. Plaintiff was unable to call two witnesses that he requested . . . who had personal knowledge of material facts pertaining to the case. There was no transcript of the hearing. Plaintiff was denied a choice in choosing a neutral Board member. Defendant's failure to notify plaintiff of a pending investigation regarding the alleged incidents of August 3 at all, combined with the failure to include the Inspector's report, deprived plaintiff of a fair and impartial hearing.

(*Id.* ¶ 36.) Plaintiff alleges that Defendant Metro North's representative on the SBA, Andrew Paul, "knew or should have known that the three prior disciplines had been expunged" (*id.* ¶ 37), and that "the acts and omissions of Andrew Paul and [Defendant] Doyle constituted fraud, and the Award should be set aside under Section 3, First (p) of the RLA, 45 U.S.C. §153." (*Id.* ¶ 38.)

## II.  Discussion

In their motions for judgment on the pleadings, Defendant ACRE and Defendant Metro North maintain that Plaintiff has failed to state a claim as to either count.

---

separate hybrid claims in and of themselves, but also as contributing factors to the hybrid claim in connection with the incidents in 2009.

### A.  Legal Standard

The standard for deciding a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is the same as under Fed. R. Civ. P. 12(b)(6).[3] *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In deciding a 12(c) motion,

> a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint.

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citations omitted). Materials outside the complaint may not become the basis for a dismissal unless it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted). If a plaintiff "has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and in general, "the harm to the plaintiff when a court considers material

---

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations are not sufficient. Id. at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

extraneous to a complaint is the lack of notice that the material may be considered." *Id.* As such, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Faulkner*, 463 F.3d at 134 (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808–09 (2d Cir.1996) (consideration of full text of documents partially quoted in complaint is permissible)).

In support of their Rule 12(c) motions, Defendant Metro North and Defendant ACRE both provided affidavits with attached exhibits. Plaintiff's attorney submitted an affidavit pursuant to Fed. R. Civ. P. 56(d) [Doc. # 39] stating that if she is unable to conduct discovery prior to opposing the 12(c) motion, she "will not be able to present facts, or will be seriously handicapped in [her] ability to present facts, essential to justify plaintiff's opposition." (*Id.* ¶ 7.) As discussed with counsel at oral argument, the Court has considered the following exhibits to Defendant Doyle's Affidavit for purposes of this motion for judgment on the pleadings: the arbitration award (Ex. A to Doyle Aff.), the CBA (Ex. B to *id.*), the first transcript of the August 21, 2009 disciplinary hearing (Ex. J to *id.*), the second transcript of the August 21, 2009 disciplinary hearing (Ex. K to *id.*), the brief of Defendant ACRE to SBA 959 (Ex. P to *id.*), and the brief of Defendant Metro North to SBA 959 (Ex. Q to *id.*). The Court also considered the letters from Defendant Doyle appended to Plaintiff's Memorandum in Opposition.

Plaintiff had notice of and relied upon each of these exhibits in framing the complaint, raises no objections to their authenticity or accuracy, and does not claim that he lacked notice of the material being considered.[4]

### B.      Count One: Plaintiff's Hybrid Claim Under 29 U.S.C. § 185

A hybrid claim under 29 U.S.C. § 185 is a cause of action comprised of claims against an employer and against the union representing the employee. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983). To prove a hybrid claim, Plaintiff must show that (1) Defendant Metro North breached a specific provision of the CBA, and (2) Defendant ACRE breached its duty of fair representation ("DFR"). *See id.* at 164–65; *see also Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282–83 (2d Cir. 2005). "Failure to establish that the union breached its duty of fair representation necessarily precludes the claim against the employer." *Pinkney v. Progressive Home Health Serv.*, 367 F. App'x 210, 212 (2d Cir. 2010). Defendants argue that (1) Plaintiff has failed to state a claim that Defendant ACRE breached its duty of fair representation, and (2) Plaintiff has failed to state a claim that Defendant Metro North breached a specific provision of the collective bargaining agreement.

---

[4] The collective bargaining agreement is "incorporated by reference" into the Second Amended Complaint because its rules have been cited extensively by Plaintiff. Similarly, the transcript of the disciplinary hearing is "integral" to the Second Amended Complaint because the allegations involve the hearing and Plaintiff likely relied upon the hearing transcript in framing the Second Amended Complaint. Further, the materials set forth by the Plaintiff are "incorporated by reference" into the Second Amended Complaint and there would be no notice prejudice to Plaintiff, who had these documents in his possession. For these reasons, the Court's consideration of this cited material does not necessitate the conversion of these Rule 12(c) motions to Rule 56 Motions for Summary Judgment.

### 1.     Defendant ACRE's Breach of the Duty of Fair Representation

A union breaches the DFR if its conduct is "'arbitrary, discriminatory or in bad faith'" and "'seriously undermine[s] the arbitral process'" *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967) and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976)).[5] Judicial review of union action is "highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citations omitted) (alterations in original).

To show a breach of the DFR, "mere negligence or errors of judgment is insufficient. . . . 'As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage.'" *Barr*, 868 F.2d at 43–44 (citing *Cook v. Pan American World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir.1985)).

Plaintiff alleges five actions by Defendant Doyle to support his claim of breach of the DFR. First, Defendant Doyle "failed to progress the three disciplines [from 1997, 1998, and 2000] to [the SBA]." (2d Am. Compl. ¶ 30.) This allegation contains

---

[5] A union's actions are arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Sanozky*, 415 F.3d at 282–83. A union's acts are "discriminatory" when "'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives,'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (internal citations omitted), and in bad faith when "encompass[ing] fraud, dishonesty, and other intentionally misleading conduct." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citations omitted).

insufficient factual matter to state a claim to relief because, as Plaintiff's counsel conceded during oral argument, there is no express allegation in the Second Amended Complaint that Plaintiff even requested that the three previous disciplinary actions be progressed, nor how this failure could constitute a breach of the DFR. [6]

The remaining four actions alleged are that Defendant Doyle: (1) failed to make crucial arguments during his representation of Plaintiff (*id.* ¶ 20), including the arguments that the offers of reinstatement "constituted an admission that the discipline of time lost was sufficient, [that] the discharge was not for just cause and should have been vacated, and [that] only the six months removal from service should have been at issue on appeal" (*id.* ¶¶ 20, 22); (2) failed to present certain witnesses on Plaintiff's behalf (*id.* ¶ 17); (3) failed to object to the reference in Defendant Metro North's Brief to Award 113 and other prior history of Plaintiff's conduct (*id.* ¶¶ 18, 21); and (4) failed to inform the SBA of the pending LERB appeal (*id.* ¶ 25). However, nothing more than possible union negligence is plausibly inferable from these facts and "mere negligence on the part of the union does not rise to the level of a breach of the duty of fair representation." *Peters v. Burlington Northern R. Co.*, 931 F.2d 534, 538 (9th Cir. 1990); *see also Cover v. Am. Postal Workers Union-AFL-CIO*, 357 F. App'x 336 (2d Cir. 2009) (no breach of defendant union's DFR where plaintiff employee was assured that a letter of warning was expunged when, in fact, expungement of the letter of warning was conditioned on not incurring

---

[6] At oral argument, Plaintiff's counsel argued that it is "implied" that he expected and intended that those disciplines would be progressed. This implication has no factual basis given Defendant Doyle's letters to Plaintiff.

13

further discipline, which plaintiff had already incurred). Considered either separately or taken together, Plaintiff's factual claims fall short of the type of conduct which could state a claim for breach of the DFR, i.e., action that is "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests." *Barr*, 868 F.2d at 43.

Plaintiff points to *Stowers v. Donahoe*, 820 F. Supp. 2d 993 (S.D. Iowa 2011), in which the defendant union's motion to dismiss was denied where allegations of an extensive and unexplained delay in handling grievances that "created a workplace atmosphere fraught with mutual labor-management hostility" were deemed to articulate arbitrary conduct sufficient to state a plausible claim. *Id.* at 996. Plaintiff also points to *Lewis v. Tuscan Dairy Farms*, 25 F.3d 1138 (2d Cir. 1994), in which the Second Circuit affirmed judgment based on a DFR violation for the plaintiff employee where the defendant union's president deliberately misrepresented to union members that their seniority status would be maintained during the merger of the employer's business with a competitor, despite "willfully concealing" from the union members an oral agreement with the competitor that seniority status would not be maintained. *Id.* at 1142–43.

Here, as distinguished from *Stowers* and *Lewis*, the allegations of Defendant Doyle's failures constitute at most "tactical errors," and not a claim for a breach of the DFR. *See Barr*, 868 F.2d at 43–44 ("The decisions taken here by Local 804 were tactical in nature. At most, they may have been errors of judgment. In any event, they were not so egregious as to be evidence of bad faith and failure fairly to represent Barr. . . . A union's

good faith, non-arbitrary failure to take an action that is unlikely to be advantageous does not subject it to liability for breach of its duty of fair representation."); *see also Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 05cv2666(JBW), 2005 WL 1661093, at *1, *7 (E.D.N.Y. July 14, 2005) (noting that "[t]he enormous burden on a plaintiff to establish that a union breached its duty of fair representation was emphasized in *Barr*," and finding no breach of the DFR where plaintiff employee alleged defendant union denied plaintiff additional non-union counsel, failed to prepare the case, and failed to call certain witnesses because, at most, the conduct amounted to negligence, and "[f]urther discovery would provide no new relevant information with which to challenge the arbitration"). While a union "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," *Vaca v. Sipes*, 386 U.S. 171, 191 (1967), the allegations of Plaintiff's Second Amended Complaint do not plausibly suggest that Doyle's conduct before the SBA was in any way arbitrary or perfunctory or in bad faith. Accordingly, because Plaintiff has not pled sufficient facts to support a plausible claim of breach of the DFR, Count One must be dismissed.[7]

### C.   Count Two: Plaintiff's Claim Under 45 U.S.C. § 153

In Count Two, Plaintiff seeks pursuant to 45 U.S.C. § 153 to vacate the arbitral award that confirmed his termination. The RLA provides that an arbitral award stemming from

---

[7] Because Plaintiff fails to state a claim for breach of the DFR, it is unnecessary to reach the second prong of this hybrid claim, that is, whether Defendant Metro North breached a specific provision of the CBA.

the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, [1] for failure of the division to comply with the requirements of this chapter, [2] for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or [3] for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First(q). "[D]ue process affords a fourth ground for judicial review" of an arbitral award. *Int'l Ass'n of Machinists & Aerospace Workers v. Metro-North Commuter R.R.*, 24 F.3d 369, 371 (2d Cir. 1994).

Plaintiff claims to have alleged all four grounds for judicial review. (2d Am. Compl. ¶¶ 34–36.)

### 1.    Failure to Comply With the Requirements of the RLA

"The Supreme Court has characterized the scope of judicial review of a labor board's decision as 'among the narrowest known to the law.'" *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 810 (2d Cir. 2009) (quoting *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978)). "Typically, a federal court's review of board decisions under the 'failure to comply' prong has been limited to determining whether boards have complied with the RLA's procedural obligations." *United Transp. Union*, 588 F.3d at 811. The RLA provides that

disputes between an employee or group of employees and a carrier or carriers growing . . . out of the interpretation and application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled *in the usual manner* up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a *full statement of the facts and all supporting data bearing upon the disputes.*

16

45 U.S.C. § 153, First (i) (emphasis added). Although Plaintiff conclusorily alleges that "the [SBA] was not presented with a statement of the facts and all supporting data bearing upon the dispute" (2d Am. Compl. ¶ 36), it is not in dispute that both Defendant Metro North and Plaintiff's union ACRE submitted briefs to the Special Adjustment Board (*see* Brief of Metro North; Brief of ACRE), and the Arbitration Award includes factual findings. (*See* Plaintiff's Arbitration Award.) Plaintiff's Second Amended Complaint contains no facts showing plausible merit to this allegation.

**2.     Failure of Order to Conform or Confine Itself to Matters Within the Scope of the Division's Jurisdiction**

The RLA provides that "the findings and order of the division shall be conclusive on the parties." 45 U.S.C. § 153, First(q). "[W]here fraud is not an issue, we ask only whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *United Transp. Union*, 588 F.3d at 810 (citation omitted). Further,

> [a]n arbitrator's authority to settle disputes under a collective bargaining agreement is contractual in nature, and is limited to the powers that the agreement confers. . . . This rule applies not only to the arbitrator's substantive findings, but also to his choice of remedies. He may not impose a remedy which directly contradicts the express language of the collective bargaining agreement.

*Leed Architectural Products, Inc. v. United Steelworkers of America*, 916 F.2d 63, 65 (2d Cir. 1990) (citation omitted) (vacating the award of an arbitrator who ordered that the bargained-for wages of four grievants be increased). To establish that an adjustment

board has exceeded its jurisdiction, a plaintiff must show that the board failed to construe the applicable collective bargaining agreement. *See Creasey v. Metro-North Commuter*, 269 F. App'x 75, 76 (2d Cir. 2008) (holding that the board of adjustment did not exceed its jurisdiction in failing to cite the applicable collective bargaining agreement and citing instead to "established and uncontested company policy").

Plaintiff alleges that the Special Board of Adjustment failed "to conform, or confine itself, to matters within the scope of its jurisdiction, 45 U.S.C. §153, First (q)" (2d Am. Compl. ¶ 35), in converting his termination to a resignation from service, which exceeded the authority of the arbitrator [who signed the Award]." (*Id.* ¶ 23.) Plaintiff has not alleged *any* factual matter about the authority of the arbitrator or the SBA, and therefore the Court cannot draw any reasonable inference that the neutral arbitrator or the SBA plausibly exceeded their authority. Rule 21(a) of the CBA sets forth that the SBA "will have exclusive jurisdiction over all final appeals in claims for compensation, discipline proceedings, or any dispute concerning the interpretation of [the CBA]." (CBA at 24.) Plaintiff points to no provision of the CBA which suggests any prohibition on conversion of a termination to resignation, and makes no allegations as to the neutral arbitrator's authority in this regard. Thus, Plaintiff has not sufficiently pled this prong.

### 3.   Fraud or Corruption

In evaluating a claim of fraud under the Railway Labor Act, the scope of a district court's review is limited to evaluating whether "a member of the Board has engaged in fraud or corruption." *Ollman v. Special Bd. of Adjustment No. 1063*, 527 F.3d 239, 246 (2d

Cir. 2008); *see also DeClara v. Metro. Transp. Auth.*, 748 F. Supp. 92, 95 (S.D.N.Y. 1990) *aff'd sub nom.*, *DeClara v. MTA*, 930 F.2d 911 (2d Cir. 1991) ("the language of 45 U.S.C. § 153 First (q)(3) allows judicial review of the Board's decision only when there is corruption or fraud by *a member of the Arbitration Board.*") (emphasis in original).

Plaintiff alleges that Andrew Paul "knew or should have known that the three prior disciplines had been expunged," and that he and Doyle "allowed the neutral to believe that plaintiff had prior disciplines against him, and therefore was subject to harsher discipline than if he had no such record." (2d Am. Compl. ¶ 37.) Plaintiff claims that on this basis, "the acts and omissions of Andrew Paul and [Defendant] Doyle constituted fraud, and the Award should be set aside under Section 3, First (p) of the RLA, 45 U.S.C. §153." (*Id.* ¶ 38.)

Taking as true that Paul's deliberate silence on the issue of Plaintiff's disciplinary history—impacted by Doyle's failure to object—at the appeal proceeding, allowed evidence of past disciplines to be considered by the neutral, the Court concludes that there are no facts set forth that plausibly suggest that as a result, Plaintiff "was subject to harsher discipline" as is alleged. Even accepting that it was improper for Paul to have allowed such information to have gone uncorrected before the Board, the express language of the Award belies any implication that the Board weighed or considered Mr. Martino's past disciplines in deciding the outcome of Plaintiff's appeal.

The rationale of the Award focuses only on the seriousness of Plaintiff's August 2009 brake test violations, writing "[s]afety cannot be left to the individual engineer (or

employee), no matter the length of service or the extent of familiarity with the equipment. Consistency throughout the system in the performance of safety checks is paramount." (*See* Award, Ex. A to Doyle Aff. at 5.) The Board favorably acknowledged Plaintiff's "entire record during a long period of service" by its gesture directing that Plaintiff's "termination be converted to a resignation from service." (*Id.*) The Award is silent regarding Plaintiff's pre-2009 disciplinary history. Thus, given the clear language of the Award and its justification for imposing severe discipline on Plaintiff as a result of his 2009 brake violations, Plaintiff's allegation that he was subject to harsher discipline than if his past discipline had not been mentioned is speculation without facts to show its plausible merit.

As Plaintiff offers no factual allegations from which it can plausibly be inferred that the outcome of the Board's decision would have been different had the members not known of Plaintiff's past disciplinary history, the arbitration award cannot be vacated on this basis. *Cf. Fine v. CSX Transp., Inc.*, No. 99-1645, 229 F.3d 1151, at *2 (6th Cir. Aug. 18, 2000) ("Whether CSX's misstatement was made ex parte or at oral argument, it was incorrect; nevertheless, *nothing indicates that the statement influenced the Board's decision in any respect*. Fine's contention of fraud is of no moment.") (emphasis added).

### 4.    Due Process Violation

There is no due process violation where "notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008).

In support of his claim of due process violation, Plaintiff raises the same arguments addressed and rejected *supra* and also argues that there was no transcript of the proceedings as required by § 153, First (q) of the RLA (Pl.'s Opp'n at 13 n.1), and that he was "unable to call two witnesses" on his behalf (2d Am. Compl. ¶ 36).

However, 45 U.S.C. § 153 *Second*, which governs the proceedings for Special Adjustment Boards, is silent with respect to the provision of transcripts or records. *Compare* 45 U.S.C. § 153 First(q) ("The [National Railroad] Adjustment Board shall file in the court the record of the proceedings on which it based its action.") *with* 45 U.S.C. § 153 Second (as to proceedings before special adjustment boards, no requirement that a "record" of the proceedings be provided to the court). Further, in spite of the argument in Plaintiff's brief that he requested to call two witnesses at his hearing and his request was denied (*see* Pl.'s Opp'n at 13), his complaint does not include facts attributing his inability to call witnesses to the *SBA*. *See D'Elia v. New York, N. H. & H. R. R.*, 230 F. Supp. 912, 915 (D. Conn. 1964) *aff'd*, 338 F.2d 701 (2d Cir. 1964), *cert. denied*, 380 U.S. 978 (1965) ("[I]t is only a denial of due process *by some conduct of the NRAB* in the making of an award which invests the District Courts with jurisdiction to review that award, when they would not otherwise have the power to do so.") (emphasis added). Finally, since Plaintiff had notice of and participated in each of his disciplinary proceedings (Doyle Aff. ¶ 17; *see also* Exs. J, K to Doyle Aff.), Plaintiff has failed to set forth facts which, if true, plausibly show that he was deprived of his right to due process because of insufficient notice.

21

**III.     Conclusion**

For the reasons discussed above, Defendants' motions [Doc. ## 69, 74] for judgment on the pleadings are GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of June, 2013.